UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No.   23cr10056 |
| ) | |
| v.                                    ) | Violations: |
| ) | |
| MIA COX-JOHNSON,            ) | Count One: Conspiracy to Commit Extortion |
| ) | (18 U.S.C. § 1951) |
| Defendant            ) | |
| ) | Counts Two and Three: Extortion |
| ) | (18 U.S.C. § 1951) |
| ) | |
| ) | Forfeiture Allegation: |
| ) | (18 U.S.C. § 981(a)(1)(C) and |
| ) | 28 U.S.C. § 2461) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.      Defendant MIA COX-JOHNSON was a resident of Brockton, Massachusetts.

2.      The Massachusetts Registry of Motor Vehicles ("RMV") was an organization within the Massachusetts Department of Transportation. The RMV did business in and affecting interstate commerce.

3.      COX-JOHNSON was the Manager in charge of the RMV service center in Brockton, Massachusetts. COX-JOHNSON was a public official.

4.      The person identified herein as "Co-Conspirator 1" was a friend of COX-JOHNSON.

5.      The person identified herein as "Co-Conspirator 2" was a friend of Co-Conspirator 1.

6.    The person identified herein as "Individual A" was a relative of Co-Conspirator 2. Individual A's primary language was not English.

7.    The person identified herein as "Co-Conspirator 3" was a friend of COX-JOHNSON.

8.    The person identified herein as "Individual B" was a friend of Co-Conspirator 3.

9.    COX-JOHNSON received and was subject to the RMV's Code of Conduct, which stated in relevant part: "Bribery and attempted bribery are claims which strike at the core of state government. . . . [They] are the ultimate ethical violations. No public employee may permit even the slightest suggestion that the exercise or non-exercise of his or her official duties might be affected by any type of personal gain, whether monetary or non-monetary."

The Process to Obtain a Massachusetts Class D Learner's Permit

10.    The RMV, among other things, issues Class D driver's licenses. A Massachusetts Class D license authorizes a resident to drive a passenger car and certain other motor vehicles weighing not more than 26,000 pounds.

11.    Before a resident may apply for a Class D license, they must obtain a Class D learner's permit. Only after obtaining the learner's permit may a person apply to take the road test required for a Class D license.

12.    Getting a Class D learner's permit requires passing a multiple-choice test. The test is available in more than thirty languages. The applicant must answer 18 of 25 questions correctly.

13.    Before the COVID pandemic began, applicants were required to take the Class D learner's permit test in person at an RMV service center. Ordinarily, applicants took the test on

computers set up in a room at the RMV. The tests were scored by the computer.

14.     However, an applicant could ask to take the test on paper. At all times relevant to this Information, COX-JOHNSON was authorized to score paper Class D learner's permit tests taken at the Brockton RMV.

<u>Receipt of Money in Connection with Individual A's Class D Learner's Permit</u>

15.     On or before December 18, 2018, Co-Conspirator 1 learned through Co-Conspirator 2 that Individual A had taken the Class D learner's permit test in Individual A's primary language six times on the computer and had failed each time.

16.     On or before December 18, 2018, Co-Conspirator 1 told Co-Conspirator 2 that Co-Conspirator 1 had a friend at the Brockton RMV who could help Individual A pass their learner's permit test in exchange for money. Co-Conspirator 2 gave $1,000 cash to Co-Conspirator 1 to help Individual A pass their learner's permit test.

17.     On or before December 18, 2018, Co-Conspirator 1 gave COX-JOHNSON $1,000 cash in exchange for COX-JOHNSON agreeing to score Individual A as having passed Individual A's learner's permit test regardless of whether Individual A actually passed. COX-JOHNSON knew the money was not due to her.

18.     On or about December 18, 2018, Individual A went to the Brockton RMV and asked for a paper learner's permit test in English. In exchange for the $1,000 bribe, COX-JOHNSON scored Individual A as having passed the test, and Individual A received their learner's permit.

<u>The Process to Obtain a Massachusetts Commercial Learner's Permit</u>

19.     The RMV also issues commercial driver's licenses ("CDLs"). A Massachusetts resident is required to obtain a CDL in order to drive a commercial vehicle, such as a tractor-trailer or a tanker truck.

20.     Before applying for a CDL, an applicant must obtain a commercial learner's permit ("CLP"). Only after obtaining a CLP may a person apply to take the road test required for the CDL.

21.     Getting a CLP requires taking multiple-choice tests in person at an RMV service center. Every CLP applicant must pass the commercial vehicle "General Knowledge" test. If the applicant also wants a particular endorsement on their CDL, *e.g.*, an endorsement to drive a commercial vehicle containing hazardous materials, they are required to take and pass that endorsement test in person at an RMV service center.

22.     CLP applicants are required to answer 80% of questions correctly in order to pass each test. For example, an applicant must correctly answer 40 of the 50 questions on the General Knowledge test.

23.     Ordinarily, applicants take CLP tests on computers set up in a room at the RMV. The tests are scored by the computer.

24.     However, an applicant may ask to take the tests on paper. At all times relevant to this Information, paper CLP tests taken at the Brockton RMV were scored by COX-JOHNSON.

<u>Receipt of Money in Connection with Individual B's CLP</u>

25.     On or before October 21, 2019, Co-Conspirator 3 offered to help Individual B pass their CLP test(s). Co-Conspirator 3 told Individual B to go the Brockton RMV service

center and ask to take the test(s) on paper.

26.     Individual B told Co-Conspirator 3 that they planned to go to the Brockton RMV on October 21, 2019 to take their CLP tests.

27.     On or about October 21, 2019, Co-Conspirator 3 paid COX-JOHNSON approximately $200 cash in exchange for COX-JOHNSON agreeing to score Individual B as having passed their CLP tests regardless of whether Individual B actually passed. COX-JOHNSON knew the money was not due to her.

28.     On or about October 21, 2019, Individual B went to the Brockton RMV to take the General Knowledge test and two endorsement tests. Individual B asked to take the tests on paper.

29.     After Individual B completed the three paper tests and turned them in, COX-JOHNSON scored them in her office.

30.     Even though Individual B failed the General Knowledge test by answering 17 questions incorrectly, COX-JOHNSON scored Individual B as having answered 9 questions incorrectly and therefore having passed the test.

31.     COX-JOHNSON falsely represented to the RMV that Individual B had passed all three tests. As a result, the RMV issued a CLP to Individual B.

<u>Object and Purpose of the Conspiracy</u>

32.     The object of the conspiracy was for COX-JOHNSON to use her position as the Manager of the Brockton RMV to obtain property not due to her from co-conspirators, with their consent, in exchange for agreeing to score applicants as having passed their learner's permit test, whether for a Class D license or a CDL, regardless of whether they had in fact passed. The

purpose of the conspiracy was for COX-JOHNSON to enrich herself personally.

Manner and Means of the Conspiracy

33.     Among the manner and means by which COX-JOHNSON, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others known and unknown to the United States Attorney carried out the conspiracy were the following:

   a.   Instructing Class D learner's permit and CLP applicants to go the Brockton RMV service center and ask to take the permit tests on paper;

   b.   Agreeing to give a passing score on the paper tests of applicants who had been referred to the Brockton RMV by a co-conspirator regardless of whether the applicant had in fact passed; and

   c.   Paying COX-JOHNSON cash in exchange for her role in guaranteeing a passing score on the permit tests of applicants who had been referred to the Brockton RMV by co-conspirators.

<u>COUNT ONE</u>
Conspiracy to Commit Extortion
(18 U.S.C. § 1951)

The United States Attorney charges:

34.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-33 of this Information.

35.    Between a date no later than December 18, 2018 and continuing to a date no earlier than October 21, 2019, in the District of Massachusetts, and elsewhere, the defendant,

MIA COX-JOHNSON,

conspired with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others known and unknown to the United States Attorney to obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree, commerce and the movement of any article and commodity in commerce, by extortion, as that term is defined in Title 18, United States Code, section 1951; that is, by obtaining property not due to COX-JOHNSON from a co-conspirator, with the co-conspirator's consent, under color of official right.

All in violation of Title 18, United States Code, Section 1951.

COUNT TWO
Extortion
(18 U.S.C. § 1951)

The United States Attorney further charges:

36.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-33 of this Information.

37.     On or about December 18, 2018, in the District of Massachusetts, and elsewhere, the defendant,

MIA COX-JOHNSON,

did obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree, commerce and the movement of any article and commodity in commerce, by extortion, as that term is defined in Title 18, United States Code, section 1951; that is, by accepting cash in the approximate amount of $1,000 not due to her, from Co-Conspirator 2 through Co-Conspirator 1, with the consent of Co-Conspirator 1 and Co-Conspirator 2, under color of official right.

All in violation of Title 18, United States Code, Section 1951.

<u>COUNT THREE</u>
Extortion
(18 U.S.C. § 1951)

The United States Attorney further charges:

38.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-33 of this Information.

39.     On or about October 21, 2019, in the District of Massachusetts, and elsewhere, the defendant,

MIA COX-JOHNSON,

did obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree, commerce and the movement of any article and commodity in commerce, by extortion, as that term is defined in Title 18, United States Code, section 1951; that is, by accepting cash in the approximate amount of $200 not due to her, from Co-Conspirator 3, with Co-Conspirator 3's consent, under color of official right.

All in violation of Title 18, United States Code, Section 1951.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

1.      Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Section 1951, set forth in Counts One, Two, and Three, the defendant,

MIA COX-JOHNSON,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C),

and Title 28, United States Code, Section 2461(c), any property, real or personal, which

constitutes or is derived from proceeds traceable to the offense(s).

2.      If any of the property described in Paragraph 1, above, as being forfeitable

pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code,

Section 2461(c), as a result of any act or omission of the defendant --

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred or sold to, or deposited with, a third party;

        c.  has been placed beyond the jurisdiction of the Court;

        d.  has been substantially diminished in value; or

        e.  has been commingled with other property which cannot be divided without
           difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY

By:

CHRISTINE WICHERS
ADAM DEITCH
Assistant U.S. Attorneys

Date: March 2, 2023

11